FILED
2012 Mar-15 PM 02:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| Robert M. Buchanan, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 11-G-2578-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Robert M. Buchanan, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits.  Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether she has a severe impairment;

>   (3)   whether her impairment meets or equals one listed by the Secretary;
>
>   (4)   whether the claimant can perform her past work; and
>
>   (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Jerome L. Munford, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment.  The ALJ found the plaintiff unable to perform his past relevant work.  Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do."  Foote, at 1559.  When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids).  Foote, at 1558-59.  The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids.  Foote, at 1559.  In such cases "the [Commissioner] must seek expert vocational testimony.  Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE
## SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

4

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

This case involves a 47-year-old plaintiff who alleges disability due to neck pain. After an on-the-job accident, the plaintiff had a cervical discectomy and fusion in October 2002. The medical records reveal that the plaintiff was treated by Dr. Cordover, an orthopedic specialist following his surgery.

On February 7, 2008, the plaintiff saw Dr. Cordover for the first time in several years. The treatment note on that date indicates the plaintiff reported his symptoms were insidiously worsening, with some neck and posterior shoulder pain. The plaintiff reported symptoms were a "troublesome part of his everyday life." The plaintiff was noted to be taking numerous anti-inflammatory medications. On examination he was noted to have mild to moderate limitation of cervical motion, but good strength in all

major muscle groups in the bilateral upper extremities.  He was diagnosed as having "[n]eck pain with radiculopathy," or "[p]ossible referred pain or other etiology."  Dr. Cordover prescribed Mobic for pain.

The plaintiff saw Dr. Cordover on May 14, 2008.  The treatment note from that visit indicates the plaintiff's pain was to be treated by pain block.  On October 14, 2008, Dr. Cordover indicated the plaintiff's pain would be treated through medical pain management.

On December 22, 2008, Dr. Cordover discussed treatment options with the plaintiff.  Dr. Cordover noted the plaintiff's symptoms were concordant with his proximal pain.  Dr. Cordover believed a surgical option was reasonable, but advised that "even with a good result, I do not think he will be close to being completely symptom free."  Record 340.

On February 16, 2009, Dr. Cordover saw the plaintiff.  His diagnostic impression was as follows: "I do think he has juxta effusion disease.  Neck pain, spondylosis, and a component of stenosis."  Record 325.  The plaintiff's treatment options were discussed.  Dr. Cordover noted that while the plaintiff did have symptoms, any surgery would be to improve his quality of life, rather than to address neurological issues.  Dr. Cordover noted that surgery "would not be to restore function, but more so [for] pain relief."  Record 325.  Ultimately the plaintiff's workman's compensation insurance carrier would not approve surgery.

On April 20, 2009, the plaintiff again saw Dr. Cordover. His treatment note indicates the plaintiff's neck pain was being treated through diagnostic injections. On June 25, 2009, Dr. Cordover noted that the plaintiff "has some left trapezial pain/spasm." Record 351. Physical examination revealed pain in the left trapezial region. Dr. Cordover again emphasized that any surgical procedure would be "a relatively large magnitude procedure for gains, and while they may be there I do not think he will be close to symptom free." Record 351. Dr. Cordover believed that Botox injections might be helpful for his trapezial spasms.

The record shows that the plaintiff began seeing Dr. Beretta for pain management as recommended by Dr. Cordover. On November 10, 2008, Dr. Beretta prescribed Norco 7.5 mg, three per day.[1] In addition the plaintiff was prescribed Celebrex.[2] On December 10, 2008, Dr. Beretta increased the plaintiff's dose of Norco to four per day. On June 25, 2009, Dr. Beretta administered Botox injections to treat the plaintiff's trapezial spasms. On this date he also increased the plaintiff's dosage of Norco to 10 mg. four times per day. The plaintiff also saw Dr. Beretta on September 22, 2009, and his prescriptions were continued.

---

[1] Norco is a combination of acetaminophen and the opioid pain medication hydrocodone bitartrate. http://www.pdrhealth.com/drugs/norco

[2] Celebrex is a nonsteroidal anti-inflammatory drug (NSAID) used to treat acute (sudden) pain, menstrual cramps, pain and inflammation due to osteoarthritis, rheumatoid arthritis, and rheumatoid arthritis of the spine (ankylosing spondylitis). http://www.pdrhealth.com/drugs/celebrex

On December 17, 2009, Dr. Beretta noted the plaintiff was reporting pain at a nine level of severity when he sneezed or coughed. Dr. Beretta also noted that the plaintiff was dropping objects with his left hand. Record 360. The plaintiff's prescriptions were continued.

At his ALJ hearing the plaintiff testified about the effects of his pain. He testified that he stood in the shower "with warm water running on the back of my neck for anywhere from 30 to 45 minutes every morning to get it loosened up to where I can function." Record 38. He testified that depending on how bad he was hurting, he might have to apply heat to his neck, lie down and wear his neck brace, or lie on a heating pad for much of the day. Record 53. Plaintiff testified that taking his narcotic pain medication hampered his ability to function on a sustained basis. Record 40.

In addition to the diagnostic imaging studies upon which Dr. Cordover's diagnostic impressions were based, there was also an electro-diagnostic examination of plaintiff's left upper extremity. The test results were consistent with a "left lower cervical posterior rami lesion...." Record 236. This test also showed "speculative evidence of previous denervation and re-innervation in the C6/7/8 distribution...." Id. The clinical note was "suspect left lower cervical radiculopathy." Id.

The ALJ found the plaintiff's objectively determined medical condition was not of such severity that it could reasonably be expected to give rise to disabling pain. Record 24. This finding is not supported by substantial evidence in the record. As noted

above, the plaintiff has been diagnosed with cervical radiculopathy. The medical evidence shows that additional major neck surgery was considered by the plaintiff's treating orthopod. Plaintiff's pain was of such severity that he was referred for medical pain management and prescribed 40 mg of hydrocodone per day by Dr. Beretta, a pain management specialist. In addition, he suffered from trapezial spasms warranting Botox injection therapy. This overwhelming medical evidence establishes without question the presence of a severe cervical spine disorder that could reasonably be expected to cause disabling pain. The ALJ's finding that the plaintiff did not meet the Eleventh Circuit pain standard is unreasonable and unsupported by substantial evidence.

Although the ALJ purported to find the plaintiff did not meet the Eleventh Circuit pain standard, he in fact made findings regarding the plaintiff's credibility. The ALJ stated that plaintiff's "medical records, treating and examining, do not support his allegations of disabling pain and limitations." Record 21. If the ALJ believed the plaintiff did not meet the Eleventh Circuit pain standard, no credibility determination would be needed. That he made credibility findings implicitly calls into question his finding that the plaintiff did not meet the Eleventh Circuit pain standard. A review of the ALJ's credibility findings shows they are not supported by substantial evidence.

The ALJ opined that it would be unlikely the plaintiff would have failed to seek treatment until February 2008 if he were experiencing disabling pain. Record 22. This assertion is contradicted by Dr. Cordover's February 2008 treatment note, which

9

states the plaintiff "[f]eels symptoms are insidiously worsening" and had become a "troublesome part of his everyday life." Record 197. This note makes it clear the plaintiff reported that his symptoms had worsened to the point at which they required treatment. Plaintiff's alleged onset date of disability is November 28, 2007. He saw Dr. Cordover on February 7, 2008. Therefore, there was only a period of a little over two months between the time the plaintiff alleges he became disabled and the time he was seen by Dr. Cordover. It was not reasonable for the ALJ to rely upon such a short gap between the alleged onset date and the reestablishment of treatment to find the plaintiff not credible.

The ALJ interpreted Dr. Cordover's indications that there had been no change in the plaintiff's work status to mean that he did not believe the plaintiff suffered disabling pain. The record does not contain a copy of the functional capacity evaluation ("FCE") to which Dr. Cordover was referring when he indicated there had been no change. There is likewise no indication that Dr. Cordover considered pain in assessing the plaintiff's functional capacity. Without reviewing the FCE to which Dr. Cordover was referring in his notes, is impossible to know whether it said anything about the presence of pain or its severity. However, Dr. Cordover completed a clinical assessment of pain form on April 30, 2009 indicating the plaintiff had pain to such an extent that it would be distracting to adequate performance of daily activities. Record 268. Dr. Cordover also referred the plaintiff to pain management. It is unlikely he would have

done this had he believed the plaintiff did not suffer significant pain. Therefore, the ALJ unreasonably relied upon Dr. Cordover's notations that there had been no change in his previous FCE to discredit the plaintiff's allegations of disabling pain.

The ALJ also discounted the plaintiff's allegations of pain by stating that the treatment notes of Dr. Beretta (the plaintiff's treating pain management specialist) "do not indicate that the claimant has had disabling pain and limitations." Record 23. However, Dr. Beretta's treatment notes show he continuously prescribed high doses of narcotic pain medication and performed therapeutic injections in an effort to relieve the plaintiff's pain. The ALJ does not cite anything in particular in Dr. Beretta's treatment records to support his assertion they do not support the presence of disabling pain. In fact, the ALJ's entire discussion of Dr. Beretta's treatment notes after plaintiff's alleged onset date[3] is as follows: "The claimant again began treatment with Dr. Beretta in November 2008, continuing through December 2009." Record 18. The ALJ's failure to cite any specific portion of Dr. Beretta's notes, makes his reliance upon them unreasonable.

When the entire medical record is considered, it is clear the ALJ's finding that the plaintiff would have no more than mild to moderate pain is not supported by substantial evidence. The overwhelming evidence of record indicates that the plaintiff suffers with at least moderately severe pain. The ALJ's finding to the contrary is not

---

[3] Dr. Beretta treated the plaintiff in 2002. He does not appear to have treated the plaintiff again until November 2008.

supported by substantial evidence.  Because the plaintiff's pain testimony has not been properly discredited, under the law of this circuit it must be accepted as true.  The vocational expert at the plaintiff's ALJ hearing testified that a person suffering pain at a moderately severe to severe level would be unable to sustain gainful activity.  Record 63.  Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.

      This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.  An appropriate order will be entered contemporaneously herewith.

      DONE and ORDERED 15 March 2012.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.